# In the United States Court of Federal Claims

No. 21-1344C
(Filed: March 11, 2022)

## FOR PUBLICATION

|  |  |  |
|---|---|---|
| **THOMAS J. RAJ,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Military Pay: Cross-Motions for |
| **v.** | ) | Judgment on the Administrative |
| | ) | Record, RCFC 52.1; Continuation Pay, |
| **UNITED STATES,** | ) | 37 U.S.C. § 356 |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

*Thomas J. Raj, pro se* plaintiff.

*Tanya B. Koenig,* Trial Attorney, Commercial Litigation Branch, Civil Division,
U.S. Department of Justice, Washington, D.C., for defendant. With her on the briefs were
*Brian M. Boynton,* Acting Assistant Attorney General, *Patricia M. McCarthy,* Director,
*Steven J. Gillingham,* Assistant Director, Commercial Litigation Branch, Civil Division,
U.S. Department of Justice, Washington, D.C.

## OPINION AND ORDER

***BONILLA, Judge.***

Plaintiff, United States Army Major Thomas J. Raj, brings this action to challenge the
denial of his applications for continuation pay. Specifically, Major Raj asserts that the eligibility
requirements developed by the Department of Defense (DOD) and the Department of the Army
(Army) violate the Continuation Pay statute, 37 U.S.C. § 356. In addition to monetary damages
in the form of back pay, Major Raj seeks various forms of injunctive relief, punitive damages,
and administrative costs. Before the Court are the parties' cross-motions for judgment upon the
administrative record. For the reasons set forth below, defendant's motion is **GRANTED** and
plaintiff's cross-motion is **DENIED**.

## BACKGROUND

A. Military Service

On June 6, 2007, Raj was appointed to the grade of Second Lieutenant in the Regular
Army Medical Service Corps. Between June 10 and July 21, 2007, then-Second Lieutenant
Raj was temporarily assigned to the Academy of Health Sciences at Fort Sam Houston in
San Antonio, Texas to attend the Army Medical Department's Officer Basic Leader Course.

Concomitantly, on June 10, 2007, then-Second Lieutenant Raj executed a Department of the Army Service Agreement to participate in the Armed Forces Uniformed Services University of Health Sciences (USUHS) Program (USAREC Form 1223). At its core, Raj's Army Service Agreement provided him with a tuition-free medical education and degree in exchange for seven years of service thereafter as a physician and commissioned officer in the Regular Army Medical Service Corps. *See* 10 U.S.C. § 2114(c).

Starting August 13, 2007, then-Second Lieutenant Raj attended medical school as an USUHS student at the Walter Reed National Military Medical Center in Bethesda, Maryland. On May 21, 2011, upon graduation, Raj was promoted to the grade of Captain. He was ordered to report to the Walter Reed Army Medical Center in Washington, D.C. on June 6, 2011, for his first permanent station assignment. Raj was promoted to the grade of Major on May 21, 2017, and continues to serve on active duty as a physician (pathologist) and commissioned officer in the Regular Army Medical Services Corps.

## B. Applications for Continuation Pay

In 2018, Major Raj opted to participate in the Uniformed Services Blended Retirement System (BRS), a new retirement system established under the National Defense Authorization Act for Fiscal Year 2016. The BRS combines elements of the military's legacy pension system with matching contribution elections in the federal government's Thrift Savings Plan. Relevant here, as further detailed below, the BRS created a continuation pay benefit designed to incentivize mid-career service members with a one-time cash bonus in exchange for their commitment to extend their military service obligation.

On January 8, 2019, Major Raj submitted a Request for Continuation Pay and thereafter, through May 2, 2019, submitted additional information in support of his claimed entitlement. In his application, Major Raj readily conceded he was not eligible to receive continuation pay under applicable DOD guidance and Army policy, explaining that the submission and presumed denial were designed to challenge the legality of the military's construction and implementation of Congress' enactment of the claimed BRS benefit. On June 14, 2019, after consulting a military legal advisor, the Army denied Major Raj's application for continuation pay, concluding he did not satisfy the service date eligibility requirement established by Army policy. Thereafter, on June 23, 2020, Major Raj submitted a second Request for Continuation Pay and supplemented that request through July 14, 2020. On March 25, 2021, after consulting internal components, the Army denied Major Raj's second request.

## C. Procedural History

On November 14, 2020, while his second application for continuation pay was pending, Major Raj initiated this action by filing a complaint in the United States District Court for the District of Hawaii. *See Raj v. United States Army*, No. 20-CV-491 (D. Haw. Nov. 14, 2020). In his complaint, Major Raj alleged breach of contract and sought money damages in excess of $10,000. Specifically, Major Raj alleged that his June 10, 2007, Army Service Agreement entitled him to receive continuation pay after eight years of uniformed service and that the Army's policy of excluding time spent participating in the USUHS Program (*i.e.*, attending medical school) was contrary to the contract terms. Following an initial pretrial scheduling

2

conference, in light of the nature of the complaint and the amount of monetary damages sought, the district court granted a joint motion to transfer this matter to this Court pursuant to 28 U.S.C. § 1491.

On August 17, 2021, this Court granted Major Raj's unopposed motion to file an amended complaint to assert a direct challenge to the Army's policies construing and implementing the Continuation Pay statute as well as include the Army's denial of his second application for continuation pay. Major Raj also seeks various forms of injunctive relief, punitive damages, and administrative costs.

## DISCUSSION

### A.  Standard of Review

Cross-motions for judgment on the administrative record are governed by Rule 52.1(c) of the Rules of the United States Court of Federal Claims. Rule 52.1 is "designed to provide for trial on a paper record, allowing fact-finding by the trial court." *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). When presented with cross-motions for judgment on the administrative record, "the court considers whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence of record." *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018) (internal quotations omitted), *quoted in XOtech, LLC v. United States*, 950 F.3d 1376, 1379-80 (Fed. Cir. 2020).

In this case, the material facts concerning Major Raj's military service and applications for continuation pay are not in dispute. Instead, the issues presented involve statutory construction and interpretation. As such, the Court's standard of review in analyzing Major Raj's arguments have long been established by the United States Supreme Court:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress had not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Small v. United States*, 158 F.3d 576, 580-81 (Fed. Cir. 1998) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)), *amended*, 180 F.3d 1343 (Fed. Cir. 1999).

### B.  Continuation Pay

As explained above, the BRS created a one-time cash bonus benefit designed to incentivize mid-career service members to extend their military service obligation. Titled

3

"Continuation pay: full TSP members with 8 to 12 years of service," Title 37, United States Code, Section 356, provides in relevant part:

> (a) Continuation Pay. — The Secretary concerned shall make a payment of continuation pay to each full TSP member (as defined in section 8440e(a) of title 5) of the uniformed services under the jurisdiction of the Secretary who—
>
> > (1) has completed not less than 8 and not more than 12 years of service in a uniformed service; and
> >
> > (2) enters into an agreement with the Secretary to serve for not less than 3 additional years of obligated service.
>
> . . .
>
> (h) Regulations. — Each Secretary concerned shall prescribe regulations to carry out this section.

37 U.S.C. § 356. The statute also addresses, among other things, the amount and timing of the actual continuation pay payments and includes a clawback provision in the event the service member fails to complete their additional service obligation. *See id.*

In issuing guidance for the implementation of the Continuation Pay statute as authorized in Section 356(h), DOD charged Military Departments and the Secretaries concerned to "[e]stablish procedures, determine eligibility, determine the timing of payments between 8 and 12 years of service, and set amounts of continuation pay due to eligible members covered by the BRS." *See* AR at 278 ¶ 4(f)(6) (DOD Guidance for Implementation of the Blended Retirement System for the Uniformed Services (Jan. 27, 2017)), ECF Nos. 37, 40.[1] Critical here, in addressing continuation pay eligibility, the DOD guidance prescribed that the 8 to 12 years of service is to be "computed from that member's [Pay Entry Base Date (PEBD)]."[2] AR at 289 ¶ 8(b)(1)(b).

The Army, in turn, limited the eligibility window for the one-time incentive payment to coincide with the service members' eleventh year of service, calculated based on the applicant's PEBD in accordance with the DOD guidance. *See* AR at 256 ¶ 4(a)(2) (Memorandum from the Assistant Secretary of the Army, Manpower and Reserve Affairs, Blended Retirement System (BRS) Continuation Pay (CP) – Calendar Year 2019 (CY 2019); AR at 261 ¶ 4(a)(2) (same for CY 2020); AR at 267 ¶ 4(a)(2) (same for CY2021).

---

[1] "AR" denotes the Administrative Record filed in this case, consisting of two volumes filed separately (but Bates numbered consecutively) to correct the contents of the version of Volume I initially filed. *See* ECF Nos. 37-40.

[2] The Army uses the PEBD acronym to refer to Pay Entry Basic Date. *See* AR at 298.

Major Raj's challenge to DOD's and the Army's construction and implementation of the Continuation Pay statute is two-fold: first, Major Raj argues that eligibility should be calculated using a service member's Active Duty Service Date (ADSD) rather than their PEBD; and second, Major Raj asserts that the Army's limitation of eligibility to the service member's eleventh year of service is contrary to the four-year window (*i.e*, between the eighth and twelfth years of service) prescribed by Congress.  For the reasons that follow, the Court concludes that the DOD's and the Army's construction and implementation of the Continuation Pay statue—at Congress' express directive—are consistent with and permissible under the broad eligibility criteria outlined in the statute.

### 1. Active Duty Service Date (ADSD) v. Pay Entry Basic Date (PEBD)

As defined by the Defense Finance and Accounting Service (DFAS), ADSD is the date a service member enters upon active duty.  *See* DFAS Military Buy Back Field Definitions, *available at* https://www.dfas.mil/civilianemployees/militaryservice/militaryservicedeposits/ estimator/MilPayBuyBackDefinitions/.  PEBD, in turn, is defined by DFAS as "the date that denotes how much of your service is creditable towards longevity *for pay purposes*." *Id.* (emphasis added).  Major Raj's ADSD and PEBD are June 10, 2007, and May 17, 2011, respectively.  The nearly four-year differential—critical to resolving the continuation pay eligibility issue presented—is due to Major Raj's time as an USUHS medical student.  *See* DOD Financial Management Regulation, Vol. 7A ch. 01 pt. 0102 ¶ 010201(H) ("Service Not Creditable" in computing basic pay date includes "[t]he time a member serves . . . while a student at the [USUHS]."), *available at* https://comptroller.defense.gov/Portals/45/documents/ fmr/archive/ 07aarch/07a01.pdf.

The time Major Raj spent attending medical school is excluded from the calculation of his creditable service for pay and benefits.  *See* 10 U.S.C. § 2126(a) (general rule that "service performed while a member of the [USUHS] program shall not be counted . . . in computing years of service creditable under section 205 of title 37").  Indeed, as explained by this Court in *Boyer v. United States*, the Defense Officer Personnel Management Act of 1980 (DOPMA) discontinued military medical officers' entitlement to constructive service credit for their time enrolled at USUHS; consequently, the four years of medical school is no longer creditable in computing basic pay. 81 Fed. Cl. 188, 191 (2008) (citing Pub. L. No. 96-513, 94 Stat. 2835 (codified as amended in various sections of 10 U.S.C.)). *aff'd*, 323 Fed. Appx. 917 (Fed. Cir. 2009).

The military's use of PEBD (as opposed to ADSD) to determine eligibility for continuation pay is consistent with and permissible under the governing military pay statute.  As highlighted above, creditable service is generally used to determine a particular service member's pay and benefits.  In this case, moreover, immediately prior to his completion of medical school, Major Raj was placed on actual notice that his "[t]ime spent as an [USUHS] student is not creditable service for determining pay or retirement eligibility." AR at 22 (Permanent Change of Station Order No. 116-29 (Apr. 26, 2011)).

2.  Eligibility Window

The clear import of the Continuation Pay statute is to serve as a retention tool *for the military*, by offering a one-time lump sum bonus to mid-level service members to entice them to continue and extend their service obligation by at least three years.  The outer limits of the eligibility window established by Congress are between eight and twelve years of service.  *See* 37 U.S.C. § 356(a) ("completed *not less than* 8 and *not more than* 12 years of service" (emphasis added)).  Congress' use of the phrases "not less than" and "not more than" belies Major Raj's assertion that the statutory eligibility window is a full four-year period.  Put simply, the Army's use of the eligibility window between the eleventh and twelfth years qualifies as "not less than 8 and not more than 12 years of service."

Moreover, in expressly vesting the Secretaries of the military departments with statutory authority to "prescribe regulations to carry out" the Continuation Pay statute, 37 U.S.C. § 356(h), Congress afforded the military branches the discretion and flexibility necessary to determine the appropriate scope and targeted need of this statutory retention tool.  *See* 114 Cong. Rec. H6702 (2016) (Conference Report on S. 2943, National Defense Authorization Act For Fiscal Year 2017) (Continuation Pay statute intended "to provide the Secretary of Defense with the flexibility to offer continuation pay in the window between 8 and 12 years of service in exchange for a 3 years of service or greater commitment as the Secretary deems appropriate for retention."), *available at* https://www.congress.gov/114/crec/2016/11/30/CREC-2016-11-30-house.pdf (page 336 of 519).

In addressing identical statutory delegation language used in the Back Pay Act, 5 U.S.C. § 5596(c), the Federal Circuit explained that courts must "give deference to the agency's construction of the regulation and the validity of a regulation promulgated thereunder will be sustained so long as it is reasonably related to the purposes of the enabling legislation."  *Martin v. Department of the Air Force*, 184 F.3d 1366, 1369 (Fed. Cir. 1999) (cleaned up).  For the reasons stated above, the Court finds the DOD guidelines and Army policies in issue are consistent with and permissible under the Continuation Pay statute.  *Compare Small*, 158 F.3d at 580-82 (sanctioning Air Force's use of three-member "panels" to collectively conduct the work of statutory promotion "board") *with Martin*, 184 F.3d at 1370-72 (invalidating Office of Personnel Management regulation that failed to satisfy the stated purpose of the Back Pay Act to make an employee "whole" following an unjustified and corrected personnel action).

At bottom, based upon Major Raj's PEBD of May 17, 2011, he will complete 11 years of creditable service on May 17, 2022, and 12 years of creditable service on May 17, 2023.  Under current DOD guidance and Army policy, that is Major Raj's continuation pay eligibility window.  As such, the Army's denials of Major Raj's January 8, 2019, and June 23, 2020, applications for continuation pay—submitted prior to his meeting the applicable eligibility criteria—were in accordance with DOD guidance and Army policy and permissible under the governing statute.  In light of these findings, the Court need not address Major Raj's related claims for injunctive relief, punitive damages, and administrative costs.

## CONCLUSION

For the reasons stated above, defendant's motion for judgment on the administrative record (ECF No. 41) is **GRANTED** and plaintiff's cross-motion for judgment on the administrative record (ECF No. 42) is **DENIED**. The Clerk's Office is directed to **ENTER** final judgment in defendant's favor **DISMISSING** plaintiff's complaint with prejudice. No costs.

**IT IS SO ORDERED**.

Armando O. Bonilla
Judge